Docket No. 87562–Agenda 22–September 1999.

 
In re 
FRED ALLEN RICHMAN, Attorney, Petitioner.

Opinion filed April 20, 2000.

JUSTICE MILLER delivered the opinion of the court:

The petitioner, Fred Allen Richman, was disbarred on consent in 1990. In 1997 he filed the present petition, seeking reinstatement to the roll of attorneys admitted to practice law in Illinois. Both the Hearing Board and the Review Board recommended that the petition be allowed. The Administrator of the Attorney Registration and Disciplinary Commission has filed exceptions to that recommendation. We now deny the petition.

The petitioner was licensed to practice law in Illinois in 1959. At the time of the misconduct relevant here, the petitioner and another lawyer operated a firm that concentrated in personal injury and worker’s compensation cases. In October 1984, an elderly man, Herbert Bluhm, fell at the Tinley Park Plaza shopping center. Bluhm’s family retained the petitioner and his firm to represent him in the matter. Wausau Insurance Company insured Tinley Park Plaza. In December 1985, a paralegal at the petitioner’s law firm contacted Michael Wachala, a claims adjuster for Wausau. The paralegal offered to pay Wachala money in exchange for Wachala’s assistance. Wachala reported this conversation to his supervisor at Wausau. In January 1986 Wachala met with the paralegal at the law firm’s office. The paralegal said that Wachala could receive 5% of the amount for which the Bluhm case settled, and the paralegal reduced the demand in the case from $50,000 to $40,000 to make Wachala look good. The paralegal said that when the case was settled Wachala would receive his payment from the petitioner. The paralegal then introduced Wachala to the petitioner, who told Wachala that Wachala was going to have to use his imagination on the case and that he did not need to tell everyone what they were doing. Wachala returned to the law firm several weeks later. He gave the paralegal a check from Wausau for $40,000 in settlement of the Bluhm case, and Wachala received $2,000 in cash.

Working with federal postal inspectors, Wachala later contacted the petitioner regarding a fictitious Structural Work Act case. Wachala and the petitioner discussed the case several times between May and July 1986. Wachala told the petitioner about the case. When the petitioner expressed interest in representing the fictitious claimant, referred to as Don Williams, Wachala asked if he could receive money in advance. The petitioner replied that he could. The petitioner later met with and was retained by the person who he believed was Williams. At a later meeting at which Wachala and the petitioner discussed the case and its prospects, the petitioner said that he would give Wachala “a few grand” that day and additional money once the case was settled. After asking the firm’s bookkeeper for $3,000, the petitioner gave Wachala that sum in cash. The petitioner again told Wachala not to talk about the matter. Wachala asked if he would receive additional money for his work on the case in the future, and the petitioner assured Wachala that he would, with the amount calculated as a percentage of the settlement.

The petitioner was indicted in federal court in November 1988 on eight counts of mail fraud and two counts of wire fraud, based on his dealings with Wachala in the two cases. In February 1990 he was convicted on those 10 counts after a jury trial. An additional count, charging obstruction of justice, was dismissed prior to trial. The petitioner was later sentenced to concurrent terms of five years’ imprisonment on counts I through IX and to a consecutive term of five years’ probation on count X. The petitioner was also ordered to pay $40,000 in restitution to Wausau. The court of appeals affirmed the petitioner’s convictions. 
United States v. Richman
, 944 F.2d 323 (7th Cir. 1991). After serving a total of 15 months in prison, the petitioner was paroled to a halfway house, where he spent another five months. The petitioner was released from the halfway house on November 24, 1991; his parole ended on November 24, 1993, and his probation ended on February 1, 1995.

Pursuant to Supreme Court Rule 762 (134 Ill. 2d R. 762(a)), the petitioner moved to have his name stricken from the roll of attorneys admitted to practice law in Illinois in May 1990. In June 1993, he filed the first of what would eventually total three petitions for reinstatement. During the hearing on the initial petition, the petitioner admitted that on three or four occasions while practicing law he had paid $300 to adjusters for State Farm Insurance Company in an effort to expedite the processing of clients’ claims. The Hearing Board recommended that reinstatement be denied. In support of that recommendation the Hearing Board noted that the petitioner’s offenses were serious, that the petitioner had used illegal drugs, that the offenses were relatively recent, and that the petitioner had not yet completed his term of probation. The Hearing Board further recommended that the petitioner make restitution for the bribes he had paid to the State Farm adjusters. Rather than seek review of the Hearing Board’s adverse decision, the petitioner withdrew his petition for reinstatement.

The petitioner filed a second petition for reinstatement in November 1995. The Hearing Board again recommended that the petition be denied, basing its decision on concerns similar to those that underlay its decision on the petitioner’s initial request. The Hearing Board also noted that the petitioner had failed to make restitution for the State Farm bribes and that he had not performed any charitable work. The petitioner again withdrew his petition rather than seek review of the Hearing Board’s unfavorable decision.

The petitioner filed the present petition for reinstatement on October 10, 1997. The Administrator filed objections to the petition. In the proceedings before the Hearing Board, the petitioner described his activities since his release from prison, in 1991. The petitioner stated that he now does collection work, collecting money owed by patients to medical providers. Some of the medical providers he works for are those to whom he referred business when he practiced law. Two of the providers have been named as defendants in a federal suit brought by State Farm over allegedly deceptive billing practices.

The petitioner also testified that in February 1998 he paid $1,200 to the Illinois Bar Foundation in compensation for his bribes to the State Farm adjusters. The petitioner stated that since December 1996 he has volunteered at a local hospital. He acknowledged that he used cocaine in the 1980s but testified that he has not done so since 1990. The petitioner also said that he spends a substantial amount of time and energy caring for his wife and for one of his sons, who are mentally ill. The petitioner expressed remorse and regret for his misconduct, and he insisted that he will not engage in similar misconduct in the future.

The Hearing Board, with one member dissenting, recommended that the petitioner be reinstated. The majority believed that the passage of time since the petitioner’s misconduct and evidence of the petitioner’s rehabilitation during the intervening years warranted reinstatement, even though the misconduct was serious. The majority observed that the petitioner had acknowledged the nature and seriousness of his misconduct and that he had made a contribution to the Illinois Bar Foundation in an amount equal to his admitted bribes to the State Farm adjusters. Finally, the majority believed that the petitioner had been candid in his testimony before the Board and thought that the petitioner’s professional, civic, and family activities since his disbarment constituted strong proof of his rehabilitation. The dissenting member of the Hearing Board believed that the petitioner’s request for reinstatement should be denied. The dissenting member focused on the seriousness of the petitioner’s misconduct, his failure to recognize the nature of his offenses, and his continuing relationships with many of the same medical providers with whom he had previously worked as a lawyer.

The Review Board unanimously affirmed the Hearing Board’s recommendation that the petitioner be reinstated. The Review Board concluded that none of the Hearing Board’s factual findings were against the manifest weight of the evidence. We allowed the Administrator to submit exceptions to the Review Board’s report and recommendation. 166 Ill. 2d R. 753(e). The petitioner filed an answer to the Administrator’s exceptions.

A lawyer who has been disbarred on consent must wait at least three years from the date of the order allowing his or disbarment before filing a petition for reinstatement. 134 Ill. 2d R. 767(a). In addition, a lawyer who has withdrawn a previously filed petition for reinstatement must wait at least one year after the withdrawal of the previous petition before filing a new petition. 134 Ill. 2d R. 767(a). A disbarred lawyer who seeks to resume the practice of law has the burden of proving, by clear and convincing evidence, that he or she should be reinstated. 
In re Fleischman
, 135 Ill. 2d 488, 495 (1990); 
In re Anglin
, 122 Ill. 2d 531, 539 (1988); 
In re Berkley
, 96 Ill. 2d 404, 410 (1983). Supreme Court Rule 767(f) sets forth the following guidelines for use in deciding whether a petition for reinstatement should be granted:

“The [hearing] panel shall consider the following factors, and such other factors as the panel deems appropriate, in determining the petitioner’s rehabilitation, present good character and current knowledge of the law:

(1) the nature of the misconduct for which the petitioner was disciplined;

(2) the maturity and experience of the petitioner at the time discipline was imposed;

(3) whether the petitioner recognizes the nature and seriousness of the misconduct;

(4) when applicable, whether petitioner has made restitution;

(5) the petitioner’s conduct since discipline was imposed; and

(6) the petitioner’s candor and forthrightness in presenting evidence in support of the petition.” 134 Ill. 2d R. 767(f).

Given the seriousness of the misconduct committed by the petitioner, his age and experience at the time of the wrongdoing, his lengthy delay in making restitution for the additional bribes to the State Farm adjusters, and his continued and anticipated employment in an area of law related to his original field of practice, we believe that the present petition for reinstatement should be denied.

First, the misconduct that led to the petitioner’s disbarment on consent was serious. As noted earlier, in February 1990, the petitioner was convicted in federal court on eight counts of mail fraud and two counts of wire fraud for his role in bribing a claims adjuster employed by Wausau Insurance Company in 1985 and 1986. The petitioner’s offenses revealed a person who thought nothing of violating the most basic rules of our legal system. The petitioner was disbarred on consent prior to the initiation and resolution of any disciplinary proceedings stemming from his federal convictions. That misconduct, however, would have doubtless resulted in a severe sanction had the petitioner not first pursued his own disbarment. The fraudulent conduct by the petitioner in the two cases that led to his federal convictions struck at the core of our legal system and was antithetical to our society’s most basic principles. “The seriousness of a petitioner’s past misconduct is unquestionably an important consideration [citations] which cannot be minimized by subsequent exemplary conduct.” 
In re Berkley
, 96 Ill. 2d 404, 410 (1983).

Moreover, the petitioner has committed other misconduct as well. During the proceedings on the petitioner’s first petition for reinstatement, the petitioner admitted that he had paid a total of $1,200 in bribes to claims adjusters employed by State Farm Insurance Company to speed up the processing of cases. In addition, the petitioner said that he had regularly used cocaine from the mid-1980s to the day preceding his federal incarceration, in 1990. Although the petitioner’s additional bribes and illegal drug use did not result in criminal prosecution, we should consider this additional misconduct in assessing the seriousness of the petitioner’s history of wrongdoing. 
In re Rothenberg
, 108 Ill. 2d 313, 324-25 (1985). The petitioner was admitted to the Illinois bar in 1959, and he began practicing law in 1960. Thus, at the time of these events the petitioner had been a lawyer for more than 25 years. We believe that his misconduct must be considered particularly egregious in light of his lengthy experience as a lawyer.

One circumstance further weighing against reinstatement is the petitioner’s delay in making restitution for the additional bribes to the State Farm adjusters. The petitioner did not make restitution for these additional bribes until February 1998, several months after he filed the present petition for reinstatement–his third request for that relief–and a number of years after the Hearing Board had initially suggested restitution. In denying the petitioner’s first petition for reinstatement, in August 1994, the hearing panel recommended that the petitioner make a payment in restitution of the additional bribes. The petitioner did not do so, however. Two years later, the hearing panel again spoke of the need for restitution when it denied the petitioner’s second petition for reinstatement. It was not until several months after the petitioner submitted the present request for reinstatement that he saw fit to pay restitution, choosing then to make a charitable contribution in an amount equal to his admitted bribes. See 
In re Fleischman
, 135 Ill. 2d 488, 498 (1990) (ordering restitution in an amount equal to the sum of the petitioner’s bribes to officials, in the absence of specific evidence of the value of the benefit received by the petitioner in making the bribes).

Finally, the petitioner has failed to remove himself from the milieu that fostered his earlier misconduct. He currently performs collection work for a number of different medical providers; he had referred clients to some of these providers while he was still in practice. Moreover, two of the employers the petitioner worked for at the time he filed his reinstatement petition have been sued by State Farm Insurance Company for fraud.

Recommendations of the Hearing and Review Boards are only advisory and are not binding on this court. 
In re Polito
, 132 Ill. 2d 294, 300 (1989); 
In re Alexander
, 128 Ill. 2d 524, 534 (1989); 
In re Anglin
, 122 Ill. 2d 531, 538 (1988). As a general matter, we defer to the Hearing Board and its assessment of the testimony presented in that forum. As the Administrator notes in her exceptions, however, the Hearing Board made several negative findings under the criteria listed in Rule 767 yet went on to explain that each adverse finding by itself was insufficient to bar the petitioner’s reinstatement. Perhaps the principal justification for the favorable recommendations by the Hearing and Review Boards arises from the passage of time since the petitioner’s misconduct and the perception that no amount of wrongdoing should, by itself, forever preclude a lawyer’s reinstatement. A majority of the Hearing Board gave voice to these notions in recommending the petitioner’s reinstatement. Both of these propositions are false, however. “[T]he mere passage of time is not a sufficient ground for reinstatement ***.” 
In re Thomas
, 76 Ill. 2d 185, 193 (1979). Moreover, this court has stated that some misconduct will be sufficient to forever bar a lawyer from reinstatement. “Clearly, there are certain infractions that are so serious that the attorney committing them should never be readmitted to the practice of law.” 
In re Rothenberg
, 108 Ill. 2d 313, 326 (1985). In short, there is no presumption in favor of reinstatement, and here the burden remains on the petitioner to demonstrate, by clear and convincing evidence, that he should be reinstated to the practice of law. He has not done so.

For the reasons stated, the petition for reinstatement is denied.

Petition denied.

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE McMORROW, dissenting:

Although, as the majority observes, this court is not bound by the recommendations of the Hearing and Review Boards in deciding the disposition of a petition for reinstatement (see 
In re Parker
, 149 Ill. 2d 222, 233 (1992)), the factual findings of the Hearing Board are entitled to deference because the Board “is able to observe the demeanor of witnesses, judge their credibility and evaluate conflicting testimony” (
In re Fleischman
, 135 Ill. 2d 488, 496 (1990)). Based on the Hearing Board’s factual findings with respect to the Rule 767(f) factors in this case, I cannot agree with the majority’s rejection of the Hearing and Review Boards’ recommendations that petitioner be reinstated to the practice of law.

In my view, the majority fails to afford the proper deference to the factual findings of the Hearing Board. In support of its decision to deny petitioner’s request for reinstatement, the majority relies on petitioner’s “delay in making restitution for the additional bribes to the State Farm adjusters” and his “failure to remove himself from the milieu that fostered his earlier misconduct.” The majority’s use of these facts to support denial of the petition for reinstatement is at odds with the Hearing Board’s findings.

The Hearing Board found no delay in petitioner’s payment of restitution to Wausau. He paid Wausau $40,000 in 1992. Also, although petitioner waited until 1998 to donate $1,200 to charity as compensation for his bribes to State Farm adjusters, the Hearing Board found that this $1,200 was not restitution in a “strict sense” and that petitioner was not required to pay this amount until after August 1996. Moreover, petitioner testified that he did not pay the $1,200 sooner because he was unsure to whom to make payment. The Hearing Board found petitioner’s testimony “honest, sincere and credible.”

Similarly, the Hearing Board found no impropriety associated with petitioner’s present employment relationship with medical providers to whom he had previously referred business. According to the Hearing Board, these relationships were unrelated to petitioner’s previous misconduct, and petitioner provided these medical providers with a legitimate collection service. In light of these findings by the Hearing Board, the majority’s reliance on the delay in petitioner’s payment of restitution and his relationships with certain medical providers as reasons to deny the reinstatement petition is not appropriate. See 
In re Silvern
, 92 Ill. 2d 188, 194-95 (1982) (delay in payment of restitution should not be used to defeat petition for reinstatement where delay caused in part by petitioner’s inability to remember identity of insurance companies affected by his fraudulent activity).

I also believe that the majority fails to give adequate consideration to the Rule 767(f) factors that show petitioner’s good character and rehabilitation. The Hearing Board found that the petitioner’s misconduct was extremely serious and that he was an experienced attorney when it occurred. These two Rule 767(f) factors are unfavorable to petitioner’s request for reinstatement. However, the Hearing Board’s findings with respect to the remaining four factors indicate that reinstatement is nevertheless appropriate.

The Hearing Board determined that the petitioner was credible, had recognized the nature and seriousness of his misconduct, and had expressed remorse for his actions. In addition, the Hearing Board found that the petitioner had made restitution by paying Wausau $40,000 and by giving $1,200 to a charity. According to the findings of the Hearing Board, the petitioner also had been candid and forthright in presenting evidence in support of his petition, and his conduct since his disbarment demonstrated his good character. He had overcome his drug addiction and had not used illegal drugs since 1990, he had been gainfully employed since his release from prison, he had performed charitable work, and he had provided extensive care and support for his mentally ill wife and son. 

Although petitioner’s misconduct was indeed serious, the Hearing Board’s findings demonstrate that petitioner presented clear and convincing evidence of his good character and rehabilitation. Accordingly, reinstatement is appropriate. See, 
e.g.
,
 Fleischman
, 135 Ill. 2d at 497 (finding sufficient proof of rehabilitation despite the petitioner’s bribery of public officials and 20 years of experience as an attorney); 
In re Berkley
, 96 Ill. 2d 404, 410-11 (1983) (finding sufficient proof of rehabilitation even though the Hearing Board had characterized the petitioner’s misconduct as “so bad that it could scarcely be worse”). I would grant the petition for reinstatement and respectfully dissent from the majority’s refusal to do so.

JUSTICE FREEMAN joins in this dissent.